**EXHIBIT 3**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY**

IN THE MATTER OF:

BARRETT HOLLOWAY MOORE,

                                Chapter 7
                                Case No. 17-20106-dob
                                Hon. Daniel S. Opperman

                     Debtor.

_____/

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION
OF PROTECTIVE ORDER**

Now comes Creditor Brad Thor, by and through his counsel, THE DRAGICH LAW FIRM, PLLC, and motions this Honorable Court, pursuant to Bankruptcy Rule 9024-1, to reconsider its *Protective Order* (Dated: October 3, 2017) [Docket No. 138] (the "Protective Order"), attached hereto as **Exhibit A**, for the reason that a palpable defect misled the Court and a different disposition should result from the correction thereof.

**FACTUAL BACKGROUND**

Debtor Barrett Holloway Moore (the "Debtor"), and his non-filing spouse, Mary S. Moore ("Mrs. Moore") (collectively, the "Moores"), filed their Motion for Protective Order on August 2, 2017, seeking a protective order under 11 U.S.C. §107(b) and Bankruptcy Rule 9018. *See* Motion for Protective Order [Doc. No. 113] (the "Motion"), p. 1. Debtor and his wife asserted the protective order was necessary to protect "commercial information" of the Moores, and to protect the Moores "with respect to scandalous or defamatory matter[s]." *Id.* The Moores did not present the Court with any documents or testimony actually produced or filed in this bankruptcy proceeding, which the Court could evaluate for appropriate protection. Instead, the Moores' entire Motion focused exclusively on disparaging Mr. Thor and his counsel. *See Id.* at pp. 1 − 8.

1

The Moores defined the information they desired to be effectively sealed (the "Protected Material") in broad categories:

(i)     All documents produced in response to the Court's June 9, 2017 Order Granting Stipulation for 2004 Examination of Debtor (Doc 96);

(ii)    Debtor's 2004 Examination testimony, including exhibits;

(iii)   Documents derived from or referencing same, including without limitation, copies, excerpts, summaries, or compilations; and

(iv)    Any documents filed in this matter that are scandalous or defamatory as to Debtor or his family.

**Exhibit A** at pp. 1 – 2.  Beyond the broad allegation of a need for protection, the Moores neither identified nor produced for review any particular document or specific testimony asserted to qualify as being "confidential commercial information" or "scandalous or defamatory."

At the motion hearing, the Court recognized this documentary deficit:

THE COURT:     I can't tell you today whether it's a trade secret, when it's confidential research, development, or commercial information.

* * *

But I also indicate that I am not satisfied that I really know what papers might be in play here until they've been produced.

Transcript of August 31, 2017 Hearing on Motion for Protective Order, attached hereto as **Exhibit B** at pp. 34, 35.

Counsel for Mr. Thor argued that it appeared to be "putting the cart before the horse by giving a blanket protective order" without requiring the moving parties "who [have] the burden [to] designate certain items that are covered." *Id.* at pp. 35, 36-37.  Counsel for the Debtor asserted it would be "very simple" for the Debtor and his wife to decide whether to release any document from the blanket protective order:  "Write a letter to me . . . [and] I'll probably say yes, if there's a good reason." *Id.,* p. 37.

2

The Court properly determined that Section 107(b) of Title 11 of the United States Code (the "Bankruptcy Code") provided no basis or authority for the Court to issue the protective order requested by the Moores. *Id.* at p. 33. The Court ultimately decided, however, that Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Rules") is a "broader rule" than Section 107(b), opining that Rule gave the Court the necessary authority to issue the preemptive protective order as requested. *Id.* at pp. 34, 37. Mr. Thor respectfully submits this is a palpable defect in the Court's legal analysis and requests the Court reconsider its decision to issue the Protective Order.

*[Remainder of Page Intentionally Left Blank]*

**ARGUMENT**

| **11 U.S.C. §107(b)** | **Rule 9018** |
|---|---|
| "On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – | "On motion or on its own initiative, with or without notice, the court may make any order which justice requires – |
| (1) Protect an entity with respect to a trade secret or confidential research, development or commercial information; or | (1) To protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information; [or] |
| (2) Protect a person with respect to scandalous or defamatory information contained in a paper filed in a case under this title." | (2) To protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code[.]"[1] |

**A.      Section 107(b) of the Bankruptcy Code and Rule 9018 require the Moores to meet the same threshold to receive the protection relief sought in their Motion.**

Bankruptcy Rule 9018 does not expand a bankruptcy court's ability to limit access to papers filed beyond the powers conferred in Section 107, nor does it provide a separate basis for relief. *In re Gitto/Global Corp.,* 321 B.R. 367, 373 (Bankr.D.Mass.2005); *see also* Fed. R. Bank. P. 9018 advisory committee's note ("This rule provides the procedure for invoking the court's power under § 107 of the Code."). *In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (emphasis added). *Accord, In re Rivera,* 524 B.R. 438, 443 (Bankr. D.P.R. 2015); *In re Coy,* 324 B.R. 393, 401 (Bankr. M.D. Fla. 2005); *In re Georgetown Steel Co.,* 306 B.R. 542, 546 (Bankr. D.S.C. 2004); *In re Nunn,* 49 B.R. 963, 964 (Bankr. E.D. Va. 1985).

---

[1]      Rule 9018 has an additional category, not relevant here:  "(3) To protect governmental matters that are made confidential by statute or regulation."

4

In short, if the Court has no authority under Section 107(b) to grant the requested protective order, then there is also no authority for such a protective order under Rule 9018.

**B.      The Moores failed to meet their burden of proof that warrants the protection sought here.**

Whether citing Section 107(b) or Rule 9018, the party seeking to limit access to documents in a bankruptcy proceeding bears the heavy burden of demonstrating – with actual evidence – that a particular document or specific testimony warrants protection. *Anthracite, supra,* at 174-5, 177. "It is not an easy burden nor should it be." *In re Gitto/Global, supra* at 373. "Evidence – not just argument – is required to support the extraordinary remedy of sealing. *See In re Dreier LLP*, 485 B.R. at 823 (finding that 'conclusory statements in [a declaration] are not probative')." *In re Motors Liquidation Co.,* 561 B.R. 36, 42-43 (Bankr. S.D.N.Y. 2016).

> Inherent in the language of § 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that **a particular document at issue is properly classified as "confidential" or "scandalous."** *See United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340–41 (D.Del.1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information).[2]

*Anthracite, supra*, at 171 (emphasis added).

> "[A] party requesting the impoundment or redaction of information must make **a sufficiently particularized showing** for the Court to determine that the **allegedly offending information** falls within the ambit of section 107."

*Coy, supra*, at 401 (quoting *In re Gitto/Global,* at 372–73) (emphasis added).

---

[2]      As for documents already in the public realm, "the Court has no authority to seal public documents or information derived from public documents. *Chase v. Chase (In re Chase),* 2008 WL 2945997, at *7 (Bankr.S.D.N.Y. July 25, 2008)." *Anthracite, supra*, at 171.

5

Neither Section 107(b) nor Rule 9018 provide any authority whatsoever for a blanket protective order over all future documents and testimony which may be introduced in a bankruptcy case. Instead, Section 107(b) and Rule 9018 both require that individual pieces of information must be proven to fit within the defined categories for which any limitation of access is permitted.

> [W]e first inquire **whether the documents sought to be sealed contain information which can be said to be within the § 107(b) exceptions.** If the § 107(b) exceptions do not apply, the inquiry is complete and the Court's decision will favor public access.[3]

*Coy, supra*, at 400 (quoting *Phar–Mor, Inc. v. Defendants Named Under Seal (In re Phar–Mor, Inc.),* 191 B.R. 675, 678 (Bankr.N.D.Ohio 1995).

The proper focus of the Court's inquiry, then, is not on speculation about a future use of the documents, but, instead, is on whether the documents sought to be protected fit within the narrow exceptions of Section 107(b) and Rule 9018. The party seeking to limit access to documents in a bankruptcy proceeding must "adduce testimony or introduce exhibits" to demonstrate that a particular document actually fits within a category of "trade secret," "confidential commercial information," "scandalous," or "defamatory." *In re North Bay General Hosp., Inc.,* 404 B.R. 429, 442 (Bankr. S.D.Tex. 2009) (moving party made no effort to show documents to be protected contained any scandalous or defamatory material; "bald allegation" that document is defamatory is not sufficient to limit access); *see also*, *In re FiberMark, Inc.,* 330 B.R. 480, 504 (Bankr. D. Vt. 2005).[4]

---

[3]    Whether a party seeks to "seal" a document, or whether or which parties should be given access to a document, "are two sides of the same coin." *In re Gitto/Global, supra* at 371.

[4]    The Protective Order as issued "seals first and asks questions later." It provides the Moores with a blanket of secrecy and control over bankruptcy materials, with no showing at all that any documents (or future testimony) contain any protectable information at all.

The Debtor and Mrs. Moore provided this Court with nothing but "bald allegations" that there may eventually be some "commercial information" disclosed, or that some unknown documents or testimony could be "scandalous" or "defamatory." Yet there is nothing known to date that (a) is not already available outside of these proceedings or (b) could possibly meet the required definitions for restricting access under Section 107(b) and Rule 9018.

> Information is not considered "commercial" merely because it relates to business affairs. *In re Northwest Airlines Corp.*, 363 B.R. at 706 n. 4. Commercial information is "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.' " *Gowan v. Westford Asset Mgmt. LLC (In re Dreier, LLP)*, 485 B.R. 821, 822–23 (Bankr.S.D.N.Y.2013) (quotation omitted). "The 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake. . . ." *Id.*

*Anthracite, supra*, at 178; *accord, FiberMark, supra* at 507.

As this is a Chapter 7 bankruptcy seeking to relieve the Debtor of all prior investors/creditors and debts, as opposed to a reorganization, the existence of current "competitors" seeking information from the Debtor seems unlikely. It is also difficult to imagine what valuable business information might exist, where the Debtor and his spouse have apparently not generated any income – or at least filed any income tax returns – in the past 12 years.

A detrimental impact on an interested party's reputation is simply not enough to limit access to documents in bankruptcy proceedings. *North Bay General Hosp., supra* at 442. Further, "information that is prejudicial or embarrassing is not necessarily scandalous or defamatory." *In re Gitto/Global, supra* at 374. Perhaps most importantly, "[t]hat information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents." *Anthracite, supra,* at 176. Indeed, if just "potentially" confidential, defamatory, or scandalous information were sufficient to limit access to documents in bankruptcy, "the publicly available court records

7

would look like Swiss cheese." *In re Gordon Properties, LLC,* 536 B.R. 703, 711 (Bankr. E.D. Va. 2015).

The obvious problem in discerning what information might possibly be protectable is that the Moores did not produce a single document or transcripts of testimony for the Court to review and determine if these categories apply to any actual documents or testimony. The Moores utterly failed to meet their burden of proof as required by both Section 107(b) and Rule 9018. The Moores further diverted the Court's attention from the applicable legal requirements, by focusing exclusively on attacking others and speculating on imaginary future conduct, rather than on actual documents produced or filed in the bankruptcy proceeding, containing any protectable information whatsoever.

## Conclusion

It is entirely understandable that the Court may have been distracted from the legal parameters of Section 107(b) and Rule 9018 as a result of the Moores' chosen method of presenting their Motion – launching a nuclear "first strike" in order to direct the briefing and arguments toward everything other than (1) the absence of case law supporting their position; and (2) their utter failure to demonstrate any protectable documents exist. It is also completely understandable that the Moores would very much prefer a preemptive, blanket protective order to hide the less-than-flattering details of the Debtor's bankruptcy from potential future investors. But the requirements of Section 107(b) and Rule 9018 are clear: no protective order is warranted unless specific documents are produced which meet the definitions of being "confidential commercial information," "scandalous," or "defamatory." The utter failure of the Moores to meet their burden of proof on those requirements is now also clear. Accordingly, the Protective Order] previously entered by this Court should be vacated.

8

Dated: October 16, 2017

Respectfully submitted by:

**THE DRAGICH LAW FIRM PLLC**

By: /s/ David G. Dragich
David G. Dragich (P63234)
Amanda Vintevoghel (P76567)
17000 Kercheval Avenue, Suite 210
Grosse Pointe, MI 48230
(313) 886-4550 (Telephone)
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Counsel for Creditor Brad Thor

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN THE MATTER OF:

BARRETT HOLLOWAY MOORE,                    Case No. 17-20106-dob
SS# xxx-xx-2220                            Chapter 7 filed 01/24/17
                                           Hon. Daniel S. Opperman
        Debtor.
_____/

## PROTECTIVE ORDER

        This matter having come before the Court pursuant to the Motion For Protective Order (Doc

113), an Objection having been filed by Creditor Brad Thor, a Response having been filed by the

Chapter 7 Trustee and a hearing having been held on August 31, 2017; for good cause shown, the

Court hereby finds a need for relief and being duly advised in the premises enters this

**PROTECTIVE ORDER** relating to documents and testimony in this case, and the parties having

agreed to the form[1] of this Order:

        1.    **Purpose and Limitations**.   This Protective Order issued pursuant to Fed. R.

              Bankr. P. 9018 does not prevent documents and testimony from being used or filed

              in the ordinary course of this bankruptcy proceeding.  Rather, it is narrowly drawn

              for the purpose of preventing use of discovery and litigation materials outside of this

              bankruptcy forum.   This Protective Order does not entitle any party to file

              information under seal, nor does it seek to prevent the Court from docketing filed

              documents electronically.

        2.    **Protected Material**. This Protective Order shall apply to (i) all documents produced

              in response to the Court's June 9, 2017 Order Granting Stipulation For 2004

              Examination of Debtor (Doc 96); (ii) Debtor's 2004 Examination testimony, including

              exhibits; (iii) documents derived from or referencing same, including without

              limitation, copies, excerpts, summaries, or compilations; and (iv) any documents

_____
[1] The parties do not agree to the substance of this Order.

filed in this matter that are scandalous or defamatory as to Debtor or his family. These materials shall collectively be referred to hereunder as "Protected Material."

3. **Access to and Use of Protected Material**.

    a. Protected Material may not be disclosed or disseminated to anyone except the following: the Debtor and his counsel, the Court, the U.S. Trustee, the Chapter 7 Trustee Randall Frank, and his counsel of record (attorney Henry Knier as of the date of this order), including their respective office staffs.

    b. Notwithstanding paragraph 3(a), Protected Material may be disclosed or disseminated to active creditors and their counsel who have signed the "Acknowledgment and Agreement to Be Bound By Protective Order" (the form of which has been approved by the parties) and provided copies of same to counsel for Debtor and the Chapter 7 Trustee.

    c. Protected Material, including electronic links and access to same, may not be used, copied, downloaded or disseminated by creditors or their counsel or anyone acting on their behalf or at their behest, for any purpose other than in the ordinary course of prosecuting, defending, or settling (including by mediation or arbitration) this bankruptcy proceeding.

    d. Notwithstanding paragraph 3a above, Protected Material may be used during depositions.

    e. Notwithstanding paragraph 3a above, Protected Material may be disclosed to any arbitrator or mediator that the Chapter 7 Trustee and Debtor have agreed to employ.

4. **Care of Protected Material**.

    a. In the event that Protected Material is used in connection with this captioned bankruptcy matter (including for settlement purposes) it shall not lose its protected status through such use.

b. All Protected Material in the possession of anyone other than the Court, the U.S. Trustee, the Chapter 7 Trustee, the Chapter 7 Trustee's counsel, the Debtor or Debtor's counsel shall be destroyed (including all copies, paper, electronic or otherwise) within 60 days of the conclusion of this bankruptcy proceeding (including appeals, if any), and said destruction certified in a writing delivered to the Debtor, or his counsel, or other producing party, within that time frame.

c. Notwithstanding paragraph 4b above, counsel that execute the "Acknowledgment and Agreement to Be Bound By Protective Order" are entitled to retain one archival copy of documents filed with the Court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials constitute or contain Protected Material.

d. The obligations imposed by this Protective Order shall remain in effect until a producing or testifying party agrees otherwise in writing, or a court orders otherwise.

5. **Protected Material Subpoenaed or Ordered Produced in Other Litigation**. If at any time the Protected Material governed by this Protective Order is subpoenaed or requested by a court, an administrative or legislative body, or by any other person or entity purporting to have authority to require its production, the person to whom the subpoena is directed (the "Subpoenaed Party") shall give prompt notice to the producing party, provide a copy of the subpoena or request, withhold production to the extent permitted by law, and otherwise cooperate with the producing party to facilitate timely and appropriate action to prevent disclosure/production of Protected Material. Upon the filing of a motion to quash or for protective order, the Subpoenaed Party shall withhold production of documents during the pendency of

the motion, unless required by law (or court order) to not withhold production.

6.  **Disputes.**  The Court shall retain jurisdiction to resolve any dispute concerning the use of Protected Material disclosed hereunder.

7.  **No prejudice**.  This Protective Order is entered into without prejudice of any person or party to seek further protective orders, or to seek relief from this Protective Order.

8.  **Expedited Relief**.  To minimize the time and expense of all parties and to afford the Court an opportunity to expedite relief in the event of a standstill or deadlock concerning the disclosure of Protected Material, whether an item falls within the definition of Protected Material, and enforcement of this Protective Order, a party may contact the Courtroom Deputy, Wendy Erickson at (989) 894-8844 to request the scheduling of a telephonic hearing to resolve same.

**IT IS SO ORDERED.**

Signed on October 03, 2017



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge

# EXHIBIT B

```
 1                UNITED STATES BANKRUPTCY COURT
                  EASTERN DISTRICT OF MICHIGAN
 2                     SOUTHERN DIVISION

 3  IN THE MATTER OF,              Case No. 17-20106
                                   Flint, Michigan
 4  BARRETT HOLLOWAY MOORE         August 31, 2017
    _____/     1:59 p.m.
 5
       IN RE: MOTION FOR PROTECTIVE ORDER FILED BY DEBTOR BARRETT
 6                        HOLLOWAY MOORE
             BEFORE THE HONORABLE DANIEL S. OPPERMAN
 7          TRANSCRIPT ORDERED BY: JEFFREY BIGELMAN, ESQ.

 8  APPEARANCES:

 9  For the Debtor:              ROBERT WARDROP, II, ESQ.
                                 (P31639)
10                               DENISE TWINNEY, ESQ. (P40735)
                                 Wardrop & Wardrop
11                               300 Ottawa NW
                                 Suite 150
12                               Grand Rapids, MI 49503
                                 616-459-1225
13
    For the Brad Thor:           JEFFREY BIGELMAN, ESQ. (P61755)
14                               20700 Civic Center Drive
                                 Suite 420
15                               Southfield, MI 48076
                                 248-663-1800
16
    For the Trustee:             HENRY KNIER, ESQ. (P4693)
17                               Smith, Martin, Powers & Knier
                                 900 Washington Avenue
18                               P.O. Box 219
                                 Bay City, MI 48707-0219
19                               989-892-3924

20                               MARY MOORE, ESQ.
                                 201 Mitchell Street #133
21                               Petoskey, MI 49770

22  Court Recorder:              Pamela Skillman

23  Transcriber:                 Deborah Kremlick

24
    Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.
```

1        (Court in Session)

2              THE CLERK:  All rise.  Be seated, please.  Barrett

3  Holloway Moore, case number 17-20106.

4              THE COURT:  Good afternoon.  May I have appearances

5  of counsel, please.

6              MR. WARDROP:  Your Honor, moving party Barrett Moore

7  represented by Robert Wardrop.  And with me is Denise Twinney

8  of my office.

9              THE COURT:  Good morning -- good afternoon to both

10  of you.

11             MS. TWINNEY:  Good afternoon.

12             MR. WARDROP:  Good afternoon.  Your Honor, with me

13  also is Mary Moore, one of the motioning parties.

14             THE COURT:  And good afternoon to you, Ma'am.

15             MS. MOORE:  Good afternoon.

16             MR. KNIER:  Henry Knier, attorney for Randall Frank,

17  the trustee.

18             THE COURT:  Good afternoon.

19             MR. BIGELMAN:  Good afternoon, Your Honor.  Jeffrey

20  Bigelman on behalf of Brad Thor.

21             THE COURT:  Good afternoon.  Mr. Wardrop, let me ask

22  you, it's a motion that was filed by your office but as you

23  indicated Ms. Moore also joined that.  Do I hear from both of

24  you, or just you?

25             MR. WARDROP:  Both of us.

1          THE COURT:  Okay.  Do you want to go first then

2   since you filed it?

3          MR. WARDROP:  I would, Your Honor.  Thank you. I'll

4   try to make it very brief.

5          THE COURT:  Go on.

6          MR. WARDROP:  I'm sure Your Honor's read all the

7   documents, or at least --

8          THE COURT:  I'd like to say that I have but that

9   would not be a complete and full honest statement.  I've --

10  I've reviewed all of them, I'm not too sure I can say I've

11  read every line and understood every line, especially the

12  relevance of it.  But I'm going to rely upon counsel and Ms.

13  Moore to help me out on that.  So go right ahead.

14         MR. WARDROP:  Thank you, Your Honor.  Your Honor,

15  this is a motion for a blanket protective order, it's joint

16  with the debtor's wife.  Important, Your Honor, this is not a

17  sealing, s-e-a-l-i-n-g, it's not a sealing of --

18         THE COURT:  Uh-huh.

19         MR. WARDROP:  -- of the file in any way.  It just

20  said use the docket for bankruptcy purposes only.  Don't put

21  them on the internet, don't send them to third parties.

22      Your Honor, this -- this case has had many firsts for me.

23  This is the first time I've ever thought of filing a

24  protective order.  I've never needed one, never thought so.

25  When you deal with bankruptcy trustees, you turn the documents

1 | over and they never see the light of day again.  They go into

2 | the trustee's little cubby holes and they destroy them after

3 | time.

4 | I was approached by the debtor and his wife saying we

5 | need a protective order.  And I said no, we don't need a

6 | protective order.  But the more I listened to them the more I

7 | thought it was something that was necessary in this case.

8 | Your Honor has gotten a good flavor of this case in the

9 | prior hearing and certainly in the pleadings that were filed

10 | this time.  In a way this is a four party dispute.  There's

11 | the debtor, there's the trustee, there's Mr. Thor, and there's

12 | the bank.

13 | You haven't seen the bank yet because of Ms. Hamilton's

14 | personal issues with her daughter.  She had wanted to be here

15 | today, but she couldn't be.

16 | The purpose of filing the motion was to make sure all the

17 | documents we turned over to the trustee were used only in the

18 | bankruptcy proceeding.  To date the debtor has turned over

19 | 1,500 pages of documents.  I think Mr. Meyer -- Knier brought

20 | them with him today just to show the Court if the Court

21 | wishes.

22 | There probably will be more documents produced.  Most

23 | likely some of these documents will deal with the financial

24 | affairs of Mrs. Moore.  Again, the purpose of the motion was

25 | no public disclosure, so that they don't show up on the

1 internet, we aren't asking for sealing.

2      And the trustee did file a response, Your Honor.  Mr.

3 Knier has been good to work with in this case.  We will agree

4 to all the changes that the trustee wishes to have made to the

5 proposed order.

6           THE COURT:  Right.

7           MR. WARDROP:  We expect the Court will make some

8 additional changes.  We put in, you know, some information in

9 there that the Court may not like, like the $5,000 fine.  And

10 I'm not certain the Court would buy that, but whatever.  Just

11 as an aside, Your Honor, Hank Knier – Henry Knier has been in

12 this case only for about a month and a half now.

13           THE COURT:  Uh-huh.

14           MR. WARDROP:  It's a tough case to enter, a tough

15 case from the start.  Our goal is not to burden Mr. Knier,

16 it's a tough position for him.  On one side he has the bank

17 that says there aren't any assets, we've looked.  The

18 schedules say there aren't any assets, we swear to that.

19      But then you have the Thor saying, there are assets

20 galore, go get them.  So it's a tough position.  But as of now

21 he has a zero dollars.

22      We're fortunate to have an able, skilled, and experienced

23 trustee's attorney like Mr. Knier.  I can tell you he's not a

24 push over for me at all.  He challenges me, but we've worked

25 together well.

1      You would wonder why anyone would object to this

2  protective order.  It says take the documents, don't take them

3  outside the bankruptcy, that's all we're asking.

4      Finally, Your Honor, the -- the Thor says in his

5  objection and the last thing he says, that and by filing the

6  present motion he was successful in obtaining an adjournment

7  of the Court ordered 2004 examination scheduled for August 23,

8  2017.  These are not the actions of an honest an (Inaudible)

9  debtor.

10      Absolutely false.  The Court's docket shows that to be

11  untrue.  The stipulation to extend the time for the 2004

12  examination was filed on July 20.  We didn't file the motion

13  for a protective order until 8-16.  The debtor has done

14  nothing to delay.  We've been working with Mr. Knier on

15  scheduling.  The debtor produced all the documents timely.

16      The purpose of adjourning was not this motion.  The

17  purpose was poor Mr. Knier has 1,500 pages of documents to

18  read.

19      We think that in this case unlike almost every other

20  case, there is a reason for a protective order, we pray that

21  the Court enter it.  Thank you, Your Honor.

22          THE COURT:  Thank you, Mr. Wardrop.  Mr. Knier is

23  such a quick study I'm surprised that he needs any additional

24  time to review merely 1,500 documents.

25          MR. WARDROP:  If I may defend Mr. Knier.  He needs

1   defense once in a while.

2       THE COURT:  Right.

3       MR. WARDROP:  His -- his grandchildren were in town

4   for a couple weeks and so --

5       THE COURT:  So he was distracted.

6       MR. WARDROP:  He was distracted and couldn't read

7   them then.

8       THE COURT:  Right, fair enough.  Ms. Moore, do you

9   want to add something more to what Mr. Wardrop said?  And if

10  you do, I need to have you close to a microphone is all.  That

11  would be fine, yes.

12      MS. MOORE:  May I -- my plan was to be very brief.

13  And I thank the Court for listening to me.

14      I am indeed a lawyer as has been mentioned, however, I

15  have not found myself in this position in a Court since about

16  2001, so forgive me if I'm a little bit nervous.

17      Your Honor, I have a relationship with a man who is a CEO

18  of a very respected midwestern bank.  That relationship that I

19  have with him it's personal and it's professional.  On a

20  personal level he and his family have stayed at my house and I

21  and my family have stayed at his house.  On a professional

22  level, he and a group of investors that are friends of his

23  hold a mortgage on my largest farm property.

24      On three different occasions over the past couple of

25  years Mr. Thor and/or his lawyers have contacted my friend

1  through his lawyer or through his business associates

2  unrequested and they've literally dumped hundreds of

3  litigation related documents on his desk.  And they've done

4  this, I believe, in an attempt to malign my family and to

5  interfere with our economic interests.

6      As you -- as you have now seen from the documents filed

7  with regard to this motion, many things that Mr. Thor's

8  lawyers say are not true or they're half true.  And Mr. Thor

9  doesn't tell you the most important half of the story or the

10  rest of the story.

11     Faced with much of the information that was presented to

12  Your Honor in Mr. Thor's objection, as I recounted -- as we

13  recounted in our motion there was a Judge in Emmet County who

14  said that the lawyer -- the lawyer's inclusion of this kind of

15  information was outrageously violative of the rules that

16  govern attorney, it was outrageous.

17     If these documents weren't protected by the litigation

18  privilege they would be liabelous -- libelous I believe.  They

19  would be defamatory.  So this is the kind of thing that Mr.

20  Thor is trying to do.  He wants to deliver documents to my

21  friend the CEO who holds a mortgage who is a source of

22  financing.  He wants to deliver documents like this to my

23  local director of community development down the street to

24  malign my family.

25     He wants to deliver them to my bank where he did deliver

1 | them without any real color of law and froze bank accounts

2 | including the one I need to run my farm. And he did the same

3 | with two local title companies and so on. That is all in the

4 | original motion and I would encourage Your Honor to look

5 | carefully at that.

6 | Mr. Thor has never denied that he has done any of this,

7 | he's never explained it other than a blanket statement to say

8 | well, this was all in the course of trying to collect. Why is

9 | Mr. Thor doing this? He has no litigation purpose, Your

10 | Honor. He's not checking veracity. Honestly his counsel even

11 | basically knew that he -- my husband was uncollectible back in

12 | March of 2016.

13 | No, Mr. Thor harbors malice toward my family, toward me

14 | and this he does not deny either. We put this in our original

15 | motion. We gave you evidence of the malice and it's not been

16 | denied.

17 | Your Honor, the protective order before you is completely

18 | legitimate. No one objects to it, not the Chapter 7 trustee,

19 | not the U.S. Trustee, and not CNB Bank who is my husband's

20 | largest creditor.

21 | Please, please ask yourself why Mr. Thor objects for 25

22 | or so pages. He objects because he has malice and he wants to

23 | use any documents at his disposal to malign my family. Please

24 | enter this protective order to protect me and my family. We

25 | simply don't have the resources to sue for slander, liable or

1  tortious interference after the fact.  Thank you.

2      THE COURT:  One question I have though, is -- and I

3  may take issue with you on it, it's more like 296 pages that

4  have been filed on behalf of Mr. Thor.

5      MS. MOORE:  Correct.

6      THE COURT:  Hasn't it?

7      MS. MOORE:  Yes.

8      THE COURT:  Thank you.  Mr. Knier, you want to go

9  next?  I'm assuming you've rested yourself enough that you can

10  make your way to the podium without tiring too much.

11      MR. KNIER:  Thank you, Your Honor.

12      THE COURT:  You're welcome.

13      MR. KNIER:  I did fail to let the Court know and let

14  the record know that Mr. Frank is in the courtroom with us

15  today.

16      THE COURT:  That's right.  I -- I -- didn't see him

17  earlier because you were screening him, but the esteemed Mr.

18  Frank is in the audience observing, so go right ahead.

19      MR. KNIER:  The -- the specific things that we had

20  raised issue with Mr. Wardrop has said they're willing to

21  change in the order, so that takes care of the -- the specific

22  items within this that we wanted to address.

23      I did want to just make sure it's clear that, you know,

24  from the trustee's side as far as this motion for a protective

25  order, we're not taking sides.  There -- there are -- there is

1 a comment or two that well, you know, the trustee didn't

2 object to this stuff. Well, you know, the position that we

3 took in our brief was we're not taking sides. We don't want

4 to engage in this. This is an issue that's between those two

5 parties.

6      We expect the -- the debtor to fully perform the debtor's

7 obligations under the Bankruptcy Code and we, you know,

8 generally get cooperation from creditors at the same time. So

9 -- so -- so we're not -- we're not taking a -- a side in this.

10 Certainly my choice of seats didn't take a side in this case.

11 So I just wanted to make that clear to the Court. So

12 otherwise I don't have anything further for the Court.

13           THE COURT: A question I had in -- in regard to your

14 position, how does the trustee, and maybe the trustee doesn't,

15 but does the trustee get sucked in to any of this in terms of

16 a dispute between the debtor and his wife on one hand and Mr.

17 Thor on the other in terms of documents that might be released

18 or are you satisfied that if the Court enters this order

19 everyone is basically -- can look at the documents just can't

20 share them with the public. I mean that's the --

21           MR. KNIER: You know, my -- my understanding of the

22 order as it's proposed and frankly of the comment today that

23 -- that -- that we're not taking the documents outside of

24 bankruptcy, is that any of those 1,500 pages of documents or

25 any other document we can attach to any kind of pleading that

1 we file with this Court we can, you know, use in this Court

2 for any legitimate purpose and any purpose of the trustee

3 would be legitimate. So, you know, probably the biggest

4 complication for the trustee in my mind is that we're usually

5 fairly free to share information with other people and I'm

6 just going to look at it well, I have 1,500 pages it's in my

7 briefcase, somebody wants it, they're going to have to go to

8 the debtor's counsel if there's this protective order because

9 I'm not going to deal with it.

10      THE COURT: I see. And then have the debtor's

11 counsel procure the signed agreement and then produce

12 documents to whoever that is.

13      MR. KNIER: I just want to stay out of it.

14      THE COURT: I see.

15      MR. KNIER: So this would be the first case that

16 I've had that would have a protective order of this nature and

17 I just want to say out of it, Judge.

18      THE COURT: Very well. So you're satisfied whatever

19 papers you have you're going to keep to yourself and Mr. Frank

20 and perhaps whoever else in your team needs to look at them,

21 but that's going to be it. And you might --

22      MR. KNIER: Yeah. But if I need to provide them to

23 the Court, I'll file them with pleadings to the Court.

24 There's no restrictions from any purpose within this

25 bankruptcy.

1          THE COURT:  Thank you, Mr. Knier.  Mr. Wardrop, is

2    that how you read the order as requested by the trustee?

3          MR. WARDROP:  Yes, Your Honor.  We see it as -- and

4    -- and I think you're -- we need to go one step beyond this.

5    Because we're going to have a 2004 other parties are showing

6    up at the 2004.

7          THE COURT:  Right.

8          MR. WARDROP:  And that's where we're going to run

9    into trouble if the documents be attached to the transcripts.

10   And we don't want them to go beyond that.  So anybody who gets

11   a transcript is bound by the protective order.  It says use it

12   for your purposes in this bankruptcy, but we don't want to see

13   them on the internet, we don't want to see them outside of the

14   Court.

15         THE COURT:  But now if someone attaches a document

16   of the 1,500 or so pages to a pleading filed with this Court,

17   you're fine with that.

18         MR. WARDROP:  I think it's very --

19         MS. MOORE:  No, no.

20         MR. WARDROP:  Yes, you are.  I -- I think it's a --

21   a document that's filed with the Court.

22         THE COURT:  Thank you.  Yes.

23         MS. MOORE:  To file it with the Court, yes.

24         THE COURT:  Right.

25         MS. MOORE:  But to go and put it on the CEO's desk

1  who is my friend, I think that's not --

2          THE COURT:  No, I get that, Ma'am.  But I have to

3  draw a fine line here between what can be filed and what can't

4  be filed because, you know, and I'll hear from Mr. Bigelman in

5  a minute or two here, but I don't want to make it so expansive

6  it -- it --

7          MS. MOORE:  I understand now, I agree.

8          THE COURT:  -- violates our -- our public duty that

9  we have here, so I understand what you're saying now.

10          MR. WARDROP:  It -- it -- keep it within the case.

11          THE COURT:  Right.

12          MR. WARDROP:  Any -- any legitimate use within the

13  case, fine.

14          THE COURT:  Well, thank you, Mr. Wardrop.

15          MR. WARDROP:  Thank you.

16          THE COURT:  Mr. Bigelman.

17          MR. BIGELMAN:  Thank you, Your Honor.

18          THE COURT:  You're welcome.

19          MR. BIGELMAN:  There's been a lot of talk this

20  afternoon about many issues that are frankly irrelevant to the

21  motion.  There was a lot said in the pleadings that are

22  irrelevant to the motion.

23      We responded, you know, to make a record.  But I'm not

24  going to discuss any of that here today because like I said,

25  it's -- it's irrelevant.  Section 107 has to do with giving

1 | the public access to public records that have been filed in a

2 | bankruptcy case, nothing more.

3 |     The case law is very clear that this does not extend to

4 | papers that are not filed in the bankruptcy case.  So all

5 | Section 107 says is that everything filed in a case is a

6 | public record.

7 |          THE COURT:  Uh-huh.

8 |          MR. BIGELMAN:  And then it gives certain exceptions.

9 | That's the plain language.  The interpretation of the statute

10 | is very clear, I haven't seen any diversions used through

11 | different Bankruptcy Courts or Circuits, the -- the law is

12 | extremely clear.

13 |     What they are seeking is a perverse reading of Section

14 | 107.  What they want to do is they want to extend 107 to

15 | documents produced at the 2004 exam or prior to the 2004 exam,

16 | testimony presumably a transcript from the 2004 exam, and what

17 | is extremely troubling is if you look at their protective

18 | order Paragraph 2 -- pardon me, 3 is documents derived from

19 | referencing same, including without limitation copies,

20 | excerpts, summaries, or compilations.

21 |     Number one, nothing has been filed in this case that

22 | would trigger Section 107.  So first this Court has a ripeness

23 | issue.  The matter is not ripe before the Court.

24 |     Second, there is no basis in fact or law for this Court

25 | to enter the relief that they are seeking.  This Court has no

1 authority under Section 107 or any other provision of the

2 Bankruptcy Code to enter this protective order.

3     As this Court recalls, we're -- we're eight months into

4 this case. They fought tooth and nail on every issue

5 attempting to dictate terms, conditions of a 2004 exam. We

6 had a hearing on the documents that were to be -- were to be

7 produced for a 2004 exam. This issue was never brought before

8 the Court. All of that was briefed months ago. We were here

9 for a hearing and Your Honor made a decision thereafter.

10     In regard to their blanket statement, basically a

11 recitation of the statutory language that any documents that

12 are scandalous or defamatory you need to point out what

13 document you're talking about. You can't, you know, just say

14 it in a vacuum.

15     In conclusion, the debtor is attempting to convert the

16 language of Section 107. There's no basis this motion in

17 fact or law. And even -- even if there was, this matter is

18 not ripe before the Court because nothing has been filed and

19 they have not identified anything that would fall under the

20 exceptions in 107(b).

21     What I find interesting is they say they want to protect

22 commercial information of the debtor and his wife. If you

23 look at Schedule I which is signed under -- under penalty of

24 perjury, they claim that both -- that neither the debtor nor

25 his wife have any income. So what commercial information

1 they're referring to, I'm not certain or Schedule I is false.

2     Your Honor, keep in mind this debtor has not filed tax

3 returns since 2005. So what commercial information could

4 there possibly be. He's earned no income requiring to file a

5 tax return in 12 years.

6     We've been down this road with the prior motions, prior

7 hearings that -- that I've pointed out. And if the Court

8 doesn't put a stop to this nonsense now, we're going to be

9 back here, and back here, and back here wasting everybody's

10 time and my client's money.

11     And in regard to the 2004 exam, this Court has already

12 ruled that the creditors including my client can attend the

13 2004 exam. Your Honor has made that ruling.

14     To actively participate in a 2004 exam, the creditor

15 would need to know what has been produced to the trustee. In

16 this case Mr. Knier, he came in when we were going through the

17 conflict issue. He did not sign up for this. This -- this is

18 more than he bargained for.

19     He came into this case ignorant to the facts except for

20 what was in the schedules. My client has a judgment against

21 Mr. Thor and he's been attempting to collect on that judgment

22 for three years.

23     They talk about malice and debtor's wife gets up and

24 talks about her relationship with the bank who has I think

25 like a $3,500,000 judgment against them. But when the debtor

1  filed this bankruptcy petition, he consented to the

2  jurisdiction of this Court.  The duties he has under Section

3  521.  He doesn't get to dictate how he's investigated by the

4  trustee.

5     He doesn't get to dictate terms of the 2004 exam.  All

6  he's done for eight months is play games and no 2004 exam has

7  taken place.  I haven't seen what documents he's produced.  I

8  always laugh when I come to Court and someone tells me how

9  many pages of documents they produced.  Because that's

10  irrelevant if it's not exactly what is required.  I don't know

11  what's required, but frankly I don't care how many pages were

12  produced if they're not relevant.

13     So in closing it's not ripe.  I don't believe the Court

14  has authority to enter this order.  And I would ask that we be

15  compensated for our time and expense under 28 USC 1927 because

16  this is exactly what that statute is for where proceedings

17  have been multiplied for an unreasonable purpose.  Thank you.

18          THE COURT:  What about Rule 9018?

19          MR. BIGELMAN:  In -- in regards 9018, I believe that

20  needs to be read in conjunction with Section 107.  Secondly,

21  Paragraph 1 of 9018 has to do with a trade secret or other

22  confidential research, development, or commercial information.

23     I've already spoken to the fact that the debtor has filed

24  no income tax returns since 2005.  That both the debtor and

25  his wife, the bankruptcy schedules claim to have zero income

1  in bankruptcy Schedule I.  Paragraph 1 would not apply.

2  Paragraph 2 talks about scandalous or defamatory information

3  in any paper filed in the case.

4      Nothing has been filed in the case.  Again, this goes

5  back to my ripeness argument.  And to determine whether

6  something is -- obviously something can't be defamatory if

7  it's true.  And this is a slippery slope because the next

8  thing you know we're going to be having evidentiary hearings

9  on if something was defamatory, if something was scandalous,

10  and this case which is already a complete circus, is going to

11  be a three ring circus and we're still not -- we still haven't

12  investigated, Mr. Knier has not been able to investigate

13  anything in this case.  He still hasn't been able to take the

14  2004 exam.

15      And I take exception to Mr. Wardrop saying that the 2004

16  exam was not adjourned because of this.  The 2004 exam was

17  scheduled for August 23rd.  It was absolutely adjourned without

18  a date until late September because Mr. Knier wanted this

19  matter resolved before we could take the 2004 exam.

20      In regard to Paragraph 3 of Rule 9018, that's not

21  applicable at all.  Thank you, Your Honor.

22          THE COURT:  What I don't understand here is that

23  there seems to be a propensity to take whatever is received in

24  the State Court litigation and somehow make its way across the

25  board to places where it really doesn't need to be taken at

1 | all.

2 | And then when you do that you open up everybody to the

3 | idea of was this defamatory, is it slander, is it liable, is

4 | it actionable in some other way whereas the proposal of the

5 | debtor and Ms. Moore is to basically say listen, what we're

6 | going to do is we'll keep all the papers that are being

7 | exchanged back and forth amongst those parties that need to

8 | have those papers and leave it like that.

9 | I mean it seems to me that that is a way to avoid a lot

10 | of extra litigation because the definition is, is the paper

11 | that was given by this debtor to -- to either you, or the

12 | trustee, or trustee's counsel, or somebody else, and Mr.

13 | Wardrop is not going to let up, not that he's not just around

14 | until he's been assigned a certificate and it keeps him in a

15 | more controlled forum versus the -- you know, what let's just

16 | get it all out there and then the next wave is internet some

17 | day then I'll deal with it, or another Judge will deal with

18 | it. It seems like it -- it avoids a lot of mischief along the

19 | way, Mr. Bigelman. So how do you explain that?

20 | MR. BIGELMAN: The -- the real issue here is once we

21 | get the information or the trustee gets the information.

22 | THE COURT: Right.

23 | MR. BIGELMAN: Is to independently verify if what

24 | we're getting is true, weigh the protective order as crafted

25 | because there would be no mechanism to do that or we'd be back

1 in Court on a contempt motion where they're seeking $5,000 or

2 whatever number they came up with.

3      This is all a sham to stop or hinder the investigation by

4 the trustee and to stop or hinder the assistance that Mr. Thor

5 has into the financial dealings and the shell companies of the

6 debtor, the debtor's wife, the trust they set up, and the

7 millions of dollars that we believe have been filtered through

8 there.

9           THE COURT:  Uh-huh.

10           MR. BIGELMAN:  But we need independent verification

11 of anything he produces.  But the way this is -- the way this

12 is drafted you basically have to take his word for it.  And

13 that's -- that's not something that we believe is worth a

14 nickel.

15           THE COURT:  Can you give me an example of how that

16 plays out and gets stopped and frustrates either you or the

17 trustee from investigating in the manner (Inaudible) to you,

18 Mr. Bigelman?

19           MR. BIGELMAN:  Well, basically once -- once anyone

20 would sign that, I don't know if you want to call it letter or

21 order to be bound by a protective order.

22           THE COURT:  Uh-huh.

23           MR. BIGELMAN:  Let's say the debtor gives us a tax

24 return or a -- or say that the Templeton settlement agreement.

25           THE COURT:  Right.

1        MR. BIGELMAN:  If with -- without being able to go

2   out and independently verify that what she's giving -- given

3   us is actually true and authentic copy what we're asking for,

4   we can't trust it.  I -- I've only been involved in this case

5   since the petition was filed.

6        THE COURT:  Uh-huh.

7        MR. BIGELMAN:  But what I know from reading

8   deposition transcripts, reading Court orders, is that the

9   debtor, we'll say he has a creative imagination.  And

10  basically we don't trust documents that he will produce.  We

11  do not trust testimony that he will give even under oath.  And

12  we'd want the ability to independently verify such

13  information.

14       Going to this unnamed banker's house that's supposedly

15  friends with the debtor's wife and dropping off documentation

16  is not something I'm going to do.  I don't even know who she's

17  referring to.  And --

18       THE COURT:  Well, actually I don't think Ms. Moore

19  is so much worried about you as she is about Mr. Thor, but go

20  ahead.

21       MR. BIGELMAN:  But all Mr. Thor ever wanted was --

22  and still is to be repaid.  He was defrauded.  The debtor gave

23  him an offer of judgment including all counts, including the

24  fraud and conversion counts.  That's where the $350,000

25  judgment came from.

1    And then not too far after the State Court creditors'

2   exam where the debtor -- if you read the transcript you

3   wouldn't even believe how he talked to Jennifer Schafer.  It

4   was the most abusive sexist thing you've ever seen.

5    So when they say there's malice or anything like that,

6   it's -- it's coming from one side.  The fact is is that they

7   worked diligently, Mr. Thor has worked diligently for three

8   years to recover his money and we believe that the money is

9   with Mrs. Moore, former attorney.  She's worked on this we

10  believe for years in setting up trusts and LLC's to make the

11  money as difficult as possible to find.

12   So when they play all these games they try to dictate on

13  the 2004 so there would be -- when they dictate or attempt to

14  dictate the procedures of the 2004 exam, and now -- in 17

15  years I've never seen a protective order in a main bankruptcy

16  case regarding a 2004 exam, never, not a once.

17   And again they're playing games.  And if the Court allows

18  this to continue we're going to be back here, and back here,

19  and back here on additional frivolous motions.  Thank you.

20       THE COURT:  Mr. Wardrop, your motion so you get the

21  right to reply.

22       MR. WARDROP:  Your Honor, we tried to craft an order

23  that just basically enclosed the bankruptcy.  There is no

24  malice, there is no intent to hide anything.  The documents

25  float freely among the parties in the bankruptcy, there's no

1  problem there.

2       If they need to take a document outside the bankruptcy,

3  show us why and the Court will certainly order it.  And I'm

4  not going to deny the ability to do that.  I'm not going to

5  stand up to the Court and try to justify why I denied it.

6       As far as the talk about the eight months.  Your Honor

7  participated in it, and you know we have not stalled.  The

8  fact that Mr. Knier hasn't been, I think the quoting was,

9  "unable to take an exam" implies we did something, we did not.

10 We cooperated.  He needed the time.

11      This protective order is necessary in this unique case.

12 Certainly this is a unique case for Your Honor, you've never

13 had one.  I doubt with this much hard feelings among the

14 parties.

15      The bankruptcy rule clearly provides for this type of

16 order.  We aren't asking for a sealing, s-e-a-l-i-n-g under

17 107.  We aren't asking the Court to seal the file, we're

18 saying use the documents for the purposes of the Bankruptcy

19 Court and don't take them outside.  Thank you, Your Honor.

20          THE COURT:  You're welcome.  Ms. Moore, you also

21 joined in the motion, so anything more you want to tell me at

22 this time?

23          MS. MOORE:  May I for just one minute?

24          THE COURT:  Go ahead, yes.

25          MS. MOORE:  Thank you.  I just wrote a couple of

1 quick points, Your Honor.  I believe that if you look at the

2 docket and the events of this case it is Mr. Thor who has

3 caused a delay and not us.  Not my husband, not me, not Mr.

4 Wardrop.

5      My bank relationship for the record is not with CNB,

6 that's not who I was talking about.  Paragraph 2 of the

7 protective order that talks about documents derived from or

8 referencing copies, excerpts, and summaries, this is very

9 normal language to include in a protective order and it

10 prevents very easy end runs.

11      For example I can't distribute tax returns, but I can

12 write down my notes about the tax returns and I could

13 distribute those.  So it becomes a necessary part of a

14 protective order.

15      In my humble opinion and I haven't looked at a protective

16 order for a number of years either.  I see that the -- just as

17 more evidence of the smear campaign of Mr. Thor, Mr. Bigelman

18 has been affected by that because he's telling you already

19 that based on what he's read in the pleadings in the State

20 Court case my husband is a bad guy.

21      Mr. Bigelman is not to be completely trusted with the

22 facts.  Mr. Thor got his judgment in March or April of 2016.

23 That's a little more than one year ago, that's not three.

24      Mr. Bigelman actually told Mr. Gurtis in the 523

25 proceeding that Mr. Thor didn't think he needed any discovery

1 to proceed with that case, so I just question what kinds of

2 things Mr. Thor feels he has to check.

3     And lastly I just wanted to clear -- clear this up about

4 the delay or some delay.  There is another protective order

5 being discussed in this case that has to do specifically with

6 the Templeton agreement and also with the Triple Canopy

7 agreement.

8     And that protective order was probably being discussed

9 before the deposition got moved.  In that case we're waiting

10 for some input from Mr. Templeton's lawyers in Philadelphia

11 and we just don't have any control over, you know, what --

12 what -- how fast those lawyers act.

13     But that's -- for Your Honor's edification the Templeton

14 agreement that's been requested by Mr. Thor did not pay out to

15 the debtor.  So even if -- the production of that document is

16 out of my good graces, okay.

17     And then the -- the other agreement is over ten years

18 old.  It still contains some confidentiality clauses that have

19 to be honored.  Those are my only clarifications.  Thanks,

20 Your Honor.  Do you have any questions?

21         THE COURT:  I don't think I do.

22         MS. MOORE:  Thank you.

23         THE COURT:  Mr. Wardrop, I have one more question

24 for you on this in -- in scanning through the order here.

25 What about Mr. Bigelman's concerns that you know documents

1  normally would be exchanged, reviewed what have you, and Mr.

2  Bigelman is not in a position to say trust and verify.  He

3  wants to verify and then he might be able to trust.

4      Sooner or later someone needs to go back with any

5  document that might be produced through your office and say is

6  this actually an accurate bank statement.  Now that's the easy

7  one to fix because you can just go ahead and subpoena the bank

8  and you can't stop that.

9      So I've kind of got those issues figured out.  But this

10 order seems to give a mechanism for the Court upon the request

11 of any party to modify it and allow for further disclosure.

12 Am I -- am I reading it wrong or is that correct?

13         MR. WARDROP:  That was intentional, Your Honor.  So

14 that the Court could do what was necessary so that we didn't

15 do exactly what they said we were trying to do.  There always

16 has to be an out for the Court to make sure that an order like

17 this can be modified to make it fair for the parties.

18         THE COURT:  No, I get it, I get that.

19         MR. WARDROP:  Your Honor.

20         THE COURT:  Yes.

21         MR. WARDROP:  Mr. Bigelman did make a motion, I

22 believe for costs.  Do we need to address that or --

23         THE COURT:  I think we can take care of that in due

24 course, Mr. Wardrop, so --

25         MR. WARDROP:  Thank you.

1          THE COURT:  What I'm looking for, and you may have

2   mentioned it and I didn't see it.  Where is the $5,000 item?

3   I mean I'm looking at the --

4          MR. WARDROP:  It's -- I must have an old -- old

5   version, I'm sorry.  I remember it was in there and I took it

6   out.  Now I remember.  I -- that was an original draft, I'm

7   sorry, Your Honor.

8          THE COURT:  That's fine.  You just --

9          MR. WARDROP:  I think late last night I ran off it

10  from my word processing.  I must have ran off the wrong one.

11         THE COURT:  I mean I just wanted to make sure I

12  understood what I was ruling on.

13         MR. WARDROP:  No.  As I recall that was a final

14  draft and I said the Court would have wanted to impose its own

15  sanctions.

16         THE COURT:  Fair enough.  Thank you, Mr. Wardrop.

17         MR. WARDROP:  Thank you, Your Honor.

18         THE COURT:  The Court today has before it a very

19  unusual motion for the Court.  It's entitled a motion for a

20  protective order that's been filed by the debtor, Mr. Moore

21  and joined in by his wife who is in Court here today.

22       There have been two responses to the motion.  There have

23  been replies and responses filed afterwards.  One is by the

24  Chapter 7 trustee, Mr. Frank, who is in Court here today and

25  represented by Mr. Knier.  The other is on behalf of Mr. -- by

1  Mr. Bigelman on behalf of his client, Mr. Thor.

2      The initial motion before the Court attaches a number of

3  documents totaling 92 pages.  The response that was filed by

4  Mr. Thor showing they're accurate includes 296 pages.  Mr.

5  Knier on behalf of the trustee has taken the Ernest Hemingway

6  approach to responding and only has a three page response

7  including the certificate of service.

8      The Court does note that the trustee's response indicates

9  the trustee for the most part and Mr. Knier in the argument

10 here today, does not wish to become embroiled in the middle of

11 the dispute between Mr. Thor, a creditor, and the debtor on

12 the other hand.

13     However, the trustee has suggested that certain language

14 be either modified or included in lieu of a protective order.

15 And the Court understands that the debtor has no objection to

16 the inclusion of that language.

17     First off, the Court notes it has jurisdiction over this

18 matter pursuant to 28 USC Section 157, 28 USC Section 1334 as

19 well as local Rule 83.50.  This is a core proceeding pursuant

20 to 28 USC Section 157 regarding the general administration of

21 the estate, in particular the trustee's duties under the

22 Chapter 7 as well as what constitutes property of the estate,

23 as well as any causes of action that the estate may have.

24     And therefore this Court concludes that all matters

25 before the Court today falls within Title 11 of the United

1   States Code and therefore within this Court's jurisdiction.

2       The statutory authority cited by the debtor and Ms. Moore

3   is basically two statutes.  I'll not read either statute or

4   Court rule on the record.  One is 11 USC Section 107, the

5   other is Bankruptcy Rule 9018.

6       The Court will try to recite some of the history between

7   and among these parties and will not be able to cite all the

8   facts because there's just too many things here going on for

9   the Court to recite this.

10      First off, the Court will note that many years ago Mr.

11  Moore apparently was a very successful entrepreneur and

12  developed a number of mechanisms that people in America found

13  useful to them.  That he's paid them for services regarding

14  that as well as he set up various limited liability companies,

15  and other entities that are now being investigated by the

16  Chapter 7 trustee.

17      Mr. Moore also engaged in other activities all in an

18  effort to offer services to the residents of the United States

19  of America.  One of the entities that he worked with

20  ultimately involved Mr. Thor being in a litigation in

21  Cheboygan County Circuit Court for quite some time regarding

22  the interaction and relationship between Mr. Thor and Mr.

23  Moore and Ms. Moore being the wife of Mr. Moore as being

24  brought into many of these activities because of the unique

25  nature between a husband and a wife as well as also with

1  respect to the nature between Ms. Moore and Mr. Moore.  That

2  is just the way things are.

3      That litigation ultimately resulted in a judgment being

4  entered in favor of Mr. Thor and against Mr. Moore.  And that

5  litigation also resulted in the dismissal of a claim made by

6  Mr. Moore against Mr. Thor that is currently on appeal with

7  the Michigan Court of Appeals as the Court understands it.

8      The motion for a protective order attaches a number of

9  documents referenced according to the bankruptcy estate as not

10  all those reference pages that tried to describe of the

11  relationship between the Moores on the one hand and Mr. Thor

12  on the other.  Likewise the objection to the protective order

13  tries to with more pages, give the Court a better flavor for

14  the animosity between Mr. Thor and the Moores in this case.

15      The Court will just note that there is a fair amount of

16  animosity, there have been actions taken by both sides as near

17  as I can tell that this Court finds less than wise.  And that

18  it would not be advisable that calm likely has to prevail.  So

19  regrettably in the course of litigation the calmer (inaudible)

20  exists much less prevail.

21      Caught in the middle of all this is the trustee who just

22  has basically one major job and that is to administrator the

23  estate and investigate matters.  Mr. Knier thinks that he can

24  work with this order with some changes and I can see why Mr.

25  Knier thinks that.

1       The debtor argues that he is fearful that any information

2  given by him to the trustee will somehow or another make it on

3  to the internet and therefore be improperly used.  Ms. Moore

4  likewise has the same fear, perhaps even more so because

5  although it's true as it's been argued by Mr. Thor, Mr. Moore

6  voluntarily filed the petition for this Court, Ms. Moore did

7  not.

8       And it's also clear as to the number of exhibits that the

9  Court's had the pleasure of reviewing versus studying, there's

10 a big difference between the two after reviewing all the

11 documents of studying some.

12      Except there are a couple of documents here that the

13 Court found extremely persuasive and in no particular order,

14 it appears to the Court there are a number of documents

15 submitted by, I assume, anyone but the Moores to various

16 financial institutions that I have no explanation as to why

17 anyone would give that information to anybody who is not

18 connected directly with this lawsuit other than in an effort

19 to put someone in an improper light.

20      Likewise I see some actual statement here by the Moores

21 that I indicated earlier, that at best I would call unwise.  I

22 see no reason for this -- these actions to continue.

23      The best word I can use is shenanigans.  And when I say

24 shenanigans, I mean everybody has played except the trustee.

25 I'm sure there's some actions here that have been taken by the

1 | Moores that they have lost the product.  And I suspect the

2 | same as with Mr. Thor.

3 | But here I think that there is a great need for some sort

4 | of relief that's been requested by, if not Mr. Moore, because

5 | again he hasn't voluntarily filed, certainly Ms. Moore who may

6 | be dragging this matter perhaps knowingly, perhaps knowing

7 | full well what's going on here.  But I at this point I see

8 | very little downside to the requiring some sort of restriction

9 | for the time being of any papers being produced by the debtor

10 | to Mr. Knier.

11 | I do like the language suggested by Mr. Knier because I

12 | think it's a little bit cleaner.  I think it makes it easier

13 | and under any circumstance I think it's appropriate that these

14 | papers be given to Mr. Knier and that he not be required to be

15 | the gatekeeper or decide who does what or who gets to do what.

16 | So to the extent necessary, and I do compliment the

17 | language you suggested.  Accordingly I'd direct the debtor to

18 | incorporate that language in the order.

19 | And I would also indicate that the suggestion that's been

20 | drafted by Mr. Wardrop I think is an appropriate certificate

21 | under these circumstances.  That all being said, what I will

22 | note is that I don't see any basis under Section 107 to make

23 | this ruling.  So I have to go to Rule 9018 of the bankruptcy

24 | rules and the basis for 9018 as indeed as Mr. Bigelman has

25 | indicated, Section 107.

1    However, 9018 is a broader rule and the question I have

2  here for everybody is, does the paperwork -- do the papers

3  that are before the Court making the change, do they fit

4  within subsection (1).  I'm not too sure two point fits in

5  directly, but at this early stage until I see something more,

6  because I don't know what's been produced, nor am I inclined

7  to do an in camera inspection of all 1,500 pages before

8  anything gets produced.

9    I will just to try to keep this matter going, indicating

10  that Rule 9018, I think this is to protect not necessarily the

11  estate, but any entity in the name of the debtor and in this

12  case a non-debtor being Ms. Moore with respect to certain

13  property.

14    I can't tell you today whether it's a trade secret, when

15  it's confidential research, development, or commercial

16  information.  But I do know that it seems to be used for

17  whatever purpose for an improper method.  And if nothing more

18  the first rule of the Bankruptcy Rules of Procedure requires

19  this Court to try to handle these matters in an expeditious

20  manner to resolve injustice and any extensive determination of

21  the other case and proceeding.

22    So Rule 9 -- 1001 and also applies here in my view.  So

23  with all this in mind, what I will do is, I am going to grant

24  the motion, will grant the motion for the protective order

25  subject to the changes asked for by Mr. Knier.  I'll also

1 inquire that the certificate herein attached is Exhibit O, I

2 believe -- right, to be executed.

3     But I also indicate that I am not satisfied that I really

4 know what papers might be in play here until they've been

5 produced.  And so, Mr. Bigelman once you get something, and

6 after you've investigating it and if you happen to have some

7 questions and you believe that you need some leave of the

8 Court, I would suggest that you contact the Court as soon as

9 you can and try to file what I'll call a plain vanilla motion

10 and to have me look at this because the last thing I want to

11 have you do is file something and find out that you've somehow

12 or another gotten on the Irish side of the Moores and expose

13 you to some talking.

14     But I'm not -- and I think it's a legitimate concern.  We

15 first off, we don't know if they're going to say what they're

16 going to do.  And once you hear that, I think you really have

17 the opportunity to say I need to follow up further.  So --

18         MR. BIGELMAN:  Aren't we putting the cart before the

19 horse by giving a blanket protective order?  Because the

20 burden -- the case law is clear, the burden is on them to show

21 what items are, you know –

22         THE COURT:  Yes.

23         MR. BIGELMAN:  Fit in that laundry list under Rule

24 9018.  That the onus should not be on me to come to the Court

25 and ask relief and say, can I independently verify this.  The

1 onus is on them and the burden is on them to prove to the

2 Court, to prove their burden that certain items should be

3 protected.  They shouldn't have a -- a blanket order and then

4 shift the burden to my client.  That's not -- that's not

5 right.

6          THE COURT:  I understand your concern, Mr. Bigelman.

7 But the problem is that I would generally agree with you as a

8 general proposition, but there's a lot of history here.  And I

9 can't tell at this early stage whether the history was really

10 showing that both sides are bad actors, one side is a bad

11 actor, or no side is a bad actor.

12      But here to use a different analogy, I'm liking it to

13 toothpaste in the tube.  It's a whole lot easier to keep it in

14 the tube and then find out when you're squeezing it that it

15 should have been squeezed out versus squeezing it all over the

16 place and then everyone tries to come back and put it in the

17 tube.

18      Mr. Bigelman, I'm -- I'm -- I'm sympathetic to your

19 plight.  And that's why I'm trying to come up with a very

20 quick process so that if need be, I can look at this as

21 opposed to 1,500 pages in camera, I'm hoping double digits as

22 opposed to triple digits.

23          MR. BIGELMAN:  Wouldn't the better way be for you to

24 enter -- it appears you're going to enter some type of

25 protective order, and make opposing counsel who has the burden

1  designate certain items that are covered?  Wouldn't that be

2  the better way of going forward?

3          THE COURT:  I don't know.  Mr. Wardrop, what do you

4  think of that proposition, although, I thought I had ruled on

5  this, but –

6          MR. WARDROP:  I thought you'd ruled, Your Honor.

7          THE COURT:  Right.

8          MR. WARDROP:  But, you know, what are we going to

9  do?  I mean again once they're out, they're out.  And all

10 we're trying to do is to say look, use them within the case.

11 We aren't saying you can't share them with members of the

12 case, we're trying to keep it simple.

13    And if they need a document go outside it's very simple.

14 Write a letter to me, I'll say okay, I'll –- I'll probably say

15 yes if there's a good reason.

16          THE COURT:  Uh-huh.

17          MR. WARDROP:  Otherwise I'm going to be having to

18 come to the Court and we're going to be back here in a

19 hearing.  Because I guarantee you that they will not agree

20 this way.

21          THE COURT:  I understand.  What I think we'll do

22 here is that my previous order and opinion stands.  Mr.

23 Wardrop, I'm going to task you with the order.  But I'm also

24 going to put one more thing, if you want to include this in

25 the order, go right ahead, Mr. Wardrop.  And that is if there

1 is the mechanism that you have suggested and it comes to a

2 standstill, either -- well, I guess Mr. Bigelman, it would be

3 you, just give Ms. Erickson a call and we'll put it on an

4 expedited basis and I'll do it by phone.

5     And the advantage of doing it by phone is twofold.

6 Number one, you don't need to drive all over the place, Mr.

7 Knier, you're driving not so far. But it keeps the expense

8 down. Number two, we can probably do it on a faster basis so

9 I -- I'm trying to fit it in as best I can in terms of within

10 the rules as well as what I think makes good common sense

11 here.

12     And if need be, I'll also indicate that the 2004 exam

13 goes a point, Mr. Bigelman, where you think it's

14 unsatisfactory, I'll let you continue that exam so that you

15 can get maybe some information between you, but as it stands

16 right now, the history here is just too venomous for the Court

17 to not do anything.

18     That also being said, I'm not going to hamstring the

19 trustee and certainly not Mr. Bigelman from doing their proper

20 investigation. So Mr. Wardrop, revise the order best I can

21 tell you. Mr. Knier and Mr. Bigelman, I have you sign off on

22 the order. And if you have problems getting the order settled

23 in the next couple days give Ms. Erickson a call and all I'm

24 going to ask is if there's a problem with the order being

25 settled, I just need to see everyone's version so that I can

1 take a look at it and if need be I'll get you on the phone so

2 we can sort out what needs to be done.

3     Again I'm trying to get this done as quickly as possible.

4 The other thing is, I just -- I want to comment on this.

5 Everyone is talking about delay and yeah, there's been a lot

6 of delay in this case if this is a routine Chapter 7.

7     But I think the day that this case was filed a routine

8 Chapter 7 designation was thrown out the window.  So I'm not

9 going to give anyone extra credit for not delaying or penalize

10 anybody if they think that side has been blamed.

11     This is a case that's just going to take a long, long

12 time.  And Ms. Moore, Mr. Bigelman, and Mr. Wardrop, if you

13 think it's going to go very quickly and very easily, I just

14 don't see it, sorry.

15         MR. BIGELMAN:  Your Honor.

16         THE COURT:  Yes, Mr. Bigelman.

17         MR. BIGELMAN:  Just so I'm clear.

18         THE COURT:  Yes.

19         MR. BIGELMAN:  Mr. Wardrop is going to turn over

20 2004 documents to me, is that correct?  So we don't have to

21 come back here.

22         THE COURT:  Well, once you sign the certificate,

23 right -- I mean that's -- that's what you're talking about.

24         MR. WARDROP:  I thought that the purpose was that

25 we'd turn over to the trustee.

1          THE COURT:  Right.

2          MR. WARDROP:  And then would have the 2004

3   examination and all the documents would come out.  If -- if

4   they want copies of the documents turned over to Mr. Knier,

5   we'll turn them over.

6          THE COURT:  Mr. Knier, is that what you want?  Well,

7   maybe I'm confused.  I thought the documents have already been

8   turned over to --

9          MR. WARDROP:  They have.

10          THE COURT:  So what are we talking about now, Mr.

11   Bigelman?

12          MR. BIGELMAN:  Well, Mr. Knier indicated he didn't

13   want to get involved with sharing the documents with any of

14   the creditors, so meaning I would have to go to Mr. Wardrop to

15   get the documents.  So I don't want to have to file a motion

16   to come back here so I figured let's deal with this today.

17          THE COURT:  Okay.  I think I see the concern.  Mr.

18   Wardrop.

19          MR. WARDROP:  As soon as this order entered, this

20   matter is free to them over.

21          MR. KNIER:  And, Your Honor, I just want to stay out

22   of that.  I want the certificate to go to Mr. Wardrop, but I'm

23   sure I'll get a copy so I know about it, but I -- I don't want

24   to be the gatekeeper there.  I want Mr. Wardrop and whatever

25   creditors want this stuff, them to deal with it.

1              THE COURT:  So --

2              MR. WARDROP:  As soon as your order is signed, Your

3    Honor, and the certificate is signed, we will deliver a disk

4    in whole.

5              THE COURT:  Does that answer your concern, Mr.

6    Bigelman?

7              MR. BIGELMAN:  Yes, Your Honor.

8              THE COURT:  Okay.  And Mr. Bigelman, if you sign

9    that certificate and you don't get the documents, you know, in

10   due course and I know that's like well, what does that mean.

11   But very quickly, give us a call and Mr. Wardrop, be ready to

12   take a phone call.  I think you know how that's going to go

13   down very quickly.

14             MR. WARDROP:  I know exactly how it's going down,

15   Your Honor.

16             THE COURT:  There you have it.  So does that answer

17   your question, Mr. Bigelman?  I want you to walk out of here

18   not completely satisfied because no one does that.  But at

19   least you know what your course of action is.

20             MR. BIGELMAN:  Yes, Your Honor.  Thank you.

21             THE COURT:  Thank you.  Anything more, Mr. Wardrop?

22             MR. WARDROP:  No, Your Honor.  Thank you.

23             THE COURT:  Ms. Moore, anything more for you?

24             MS. MOORE:  No thanks.

25             THE COURT:  Mr. Knier.

1          MR. KNIER:  No.  Thank you, Your Honor.

2          THE COURT:  And Mr. Bigelman.

3          MR. BIGELMAN:  No. Thank you, Your Honor.

4          THE COURT:  You're welcome.  Thank you.

5          THE CLERK:  Court is in recess.  All rise.

6      (Court Adjourned at 3:02 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7    I certify that the foregoing is a correct transcript from the

8    electronic sound recording of the proceedings in the

9    above-entitled matter.

10

11   /s/Deborah L. Kremlick, CER-4872        Dated: 9-26-17

12

13

14

15

16

17

18

19

20

21

22

23

24

25